*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MILLER/HENTON, Minors.

UNPUBLISHED
July 14, 2026
9:28 AM

No. 378627
Macomb Circuit Court
Family Division
LC Nos. 2022-000278-NA;
2022-000279-NA

Before: RICK, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Respondent appeals as of right from the order terminating her parental rights to her minor children, MBM and SJH.[1] We affirm.

## I. STATUTORY GROUNDS

Respondent argues the trial court clearly erred when it found MCL 712A.19b(3)(c)(*i*), (g), and (j) were proven by clear and convincing evidence.

A trial court must find at least one statutory ground for termination under MCL 712A.19b(3) has been met by clear and convincing evidence to terminate parental rights. *In re Sanborn*, 337 Mich App 252, 272; 976 NW2d 44 (2021). This Court reviews for clear error a trial court's determination that a statutory ground was met. *Id.* "A decision qualifies as clearly erroneous when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.' " *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009), quoting *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003). This Court defers to "the special ability of the trial court to judge the credibility of witnesses." *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014). "If the trial

---

[1] At the time of trial, MBM was 12 years old and SJH was 9 years old.

-1-

court did not clearly err by finding one statutory ground existed, then that one ground is sufficient to affirm the termination of respondent's parental rights." *In re Sanborn*, 337 Mich App at 273.

Under MCL 712A.19b(3)(c)(*i*), a trial court is authorized to terminate parental rights under the following circumstances:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

"Termination may be proper under this ground when 'the totality of the evidence amply supports' a finding that the parent has not achieved 'any meaningful change in the conditions existing by the time of the adjudication.' " *In re Brown*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371986); slip op at 7, quoting *In re Williams*, 286 Mich App at 272. "This statutory ground exists when the conditions that brought the children into foster care continue to exist despite 'time to make changes and the opportunity to take advantage of a variety of services[.]' " *In re White*, 303 Mich App at 710, quoting *In re Powers Minors*, 244 Mich App 111, 119; 624 NW2d 472 (2000). When a respondent refuses "to address the main barriers that her mental health pose[s]" to the children's care, termination under MCL 712A.19b(c)(*i*) may be proper. *In re Smith*, 324 Mich App 28, 48; 919 NW2d 427 (2018).

More than 182 days elapsed between entry of the initial dispositional order in March 2023 and the termination hearing in September 2025. If the "conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age," MCL 712A.19b(3)(c)(*i*) is established. The petition alleged respondent neglected or refused to provide care and custody of the children, and the home or environment was an unfit place for children to live.

As the trial court found, respondent obtained housing for about eight months during the proceedings but was unable to maintain it for financial reasons, and thus did not demonstrate that she is capable of keeping a stable place for the children to live. Significantly, respondent did not complete parenting classes despite multiple referrals in the three-year pendency of the case. Respondent did not prioritize taking parenting classes, citing scheduling conflicts while concurrently denying she needed such instruction. Respondent completed her psychological evaluation but did not complete individual therapy as recommended. The necessity of parenting classes and individual therapy is reflected in respondent's treatment of her older son JMM and her later denial of the allegations in the petition. According to petitioner, respondent was "inappropriate" during parenting time with JMM, got into loud verbal arguments with him, and tried to take his clothes away because "she bought them." JMM tried to walk away from these arguments, but respondent would not "leave it alone." Respondent's treatment of JMM is "probative" of how she may treat MBM and SJH. *In re LaFrance Minors*, 306 Mich App 713, 730; 858 NW2d 143 (2014) (explaining that the doctrine of anticipatory neglect suggests a parent's

treatment of one child is indicative of how they may treat other children). The trial court suggested respondent's refusal to permit her children to go on vacation with relatives was motivated by spite.

At the termination hearing, respondent denied all the allegations in the petition, despite having pleaded no-contest to the factual basis of the allegations in the petition at the adjudication. Respondent suggested J. Henley fabricated the story and instructed the children, MBM specifically, to lie "to gain financial currency from the courts." Respondent argued she was not neglectful and there was no reason for the children to be in the care of petitioner, the Department of Health and Human Services.

Evidence supported the conclusion that respondent took no responsibility for the children being in care and took virtually no steps to improve her parenting ability or address her mental health issues, despite having three years to effectuate change. While respondent intermittently made progress finding suitable housing, her ability to maintain stable housing is unproven. Respondent did not demonstrate that she can provide proper care and custody, maintain income, or maintain appropriate housing. As such, it was not clear error for the trial court to conclude that the conditions leading to adjudication remain and there was no reasonable likelihood they would be rectified within a reasonable time considering the children's ages. MCL 712A.19b(3)(c)(*i*).

Because only one statutory ground is sufficient to terminate a respondent's parental rights, we need not address MCL 712A.19b(3)(g) and (j).

## II. BEST INTERESTS

Once the trial court has determined that one or more statutory grounds for termination have been proven by clear and convincing evidence, it must assess whether petitioner proved, by a preponderance of the evidence, that termination is in the children's best interests. *In re White*, 303 Mich App at 713. A trial court's best-interests determination is reviewed for clear error. *Id*. "A decision qualifies as clearly erroneous when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.' " *In re Williams*, 286 Mich App at 271, quoting *In re JK*, 468 Mich at 209-210.

The best-interests analysis is focused on the child, not the parent. *In re Moss*, 301 Mich App 76, 87-88; 836 NW2d 182 (2013). The trial court must "decide the best interests of each child individually." *In re Olive/Metts Minors*, 297 Mich App 35, 42; 823 NW2d 144 (2012). To determine a child's best interests, the court should weigh all available evidence and consider a variety of factors. *In re White*, 303 Mich App at 713. "A child's placement with relatives is a factor that the trial court is required to consider" and that weighs against termination. *In re Atchley*, 341 Mich App 332, 347; 990 NW2d 685 (2022) (quotation marks and citation omitted).

The evidence showed that MBM enjoyed spending time with respondent, but that he also indicated to foster care worker Angelina Fadhil that "he does not have an interest in being reunified with her and living with her again on a full-time basis," as he would prefer to reside with J. Henley. Fadhil believed termination was in MBM's best interests because he enjoys the stability and routine of living with J. Henley. MBM also liked his school, where he had many friends and excelled academically. Respondent offered contradictory testimony, suggesting MBM was upset when respondent obtained an apartment and he did not move in with her at that location. We give

deference to the trial court in matters of witness credibility, and it is apparent the trial court relied more heavily on Fadhil's testimony. *In re White*, 303 Mich App at 711. Notwithstanding this parent-child bond, MBM expressed his preference to remain with J. Henley, who is in the process of adopting him into her stable home where his needs are met. Accordingly, MBM's well-being in care, the advantage of stability and permanence at J. Henley's home and at the school, and J. Henley's willingness to adopt MBM outweigh the parent-child bond and MBM's placement with a relative, supporting a finding that termination is in MBM's best interests. *Id*. at 713-714; *In re Atchley*, 341 Mich App at 347.

SJH has been in foster care for three years, and although he "has a strong love for [respondent]," Fadhil indicated he has expressed misgivings "about being . . . reunified or continuing to . . . allow[] [respondent] to have rights over him." Fadhil argued the stability and permanence at A. Henton's home outweighed the strong bond between SJH and respondent, especially considering SJH's age and the length of time he has been in her care. SJH adapted to life with A. Henton and it would be disruptive to continue with a goal of reunification. SJH already waited three years for respondent to "get it together," and making him continue to wait would deprive him of permanence and stability. Again, respondent's testimony contradicted Fadhil's. She indicated SJH is "constantly" asking when he can return to her, and cries at the end of parenting time sessions because he does not want her to leave. While A. Henton allegedly told respondent SJH was "not doing well without seeing you," SJH did well in his placement, completed mental health services, and excelled academically. A. Henton is also currently in the process of adopting SJH. While there is a strong bond between SJH and respondent and SJH is placed with his paternal grandmother, SJH's well-being in his preadoptive home, the advantages of that stable environment, and SJH's preference for remaining there suggest termination was in SJH's best interests. *In re White*, 303 Mich App at 713-714; *In re Atchley*, 341 Mich App at 347.

Further, respondent was only partially compliant with her Parent Agency Agreement (PAA). Although the trial court found that she demonstrated "financial stability at best," respondent still struggled to maintain housing. Her eight-month period of housing stability ended because respondent lost her primary source of income and could not afford rent. Respondent was transient between leaving the apartment and moving into a house in Detroit. It is unclear whether that house was suitable for the children. Respondent did not have contact with Fadhil from about March 2025 through May 2025 and was often hostile when communicating with her. Parenting time went well until about December 2024, when respondent began arguing with JMM and R. Henley during parenting times. After parenting time was moved to the agency, respondent chose not to attend for about five months because she and the children were allegedly uncomfortable at that location. Respondent claimed at the termination hearing that her parents refused to schedule parenting time at the agency.

Respondent's psychological evaluation recommended she participate in individual therapy, which she did not complete. Respondent believed she did not need parenting classes and did not complete them, citing scheduling conflicts. As described earlier, the record suggests respondent's unaddressed mental health concerns, failure to complete parenting classes, and refusal to acknowledge the issues that brought the children into care are directly linked to her parenting ability. Respondent's noncompliance with critical elements of her PAA, deficient parenting ability, and inconsistent attendance at parenting time, as well as inappropriate behavior at parenting

time, support a conclusion that the trial court did not err in finding that termination was in the children's best interests. *In re White*, 303 Mich App at 713-714.

Affirmed.

/s/ Michelle M. Rick
/s/ Christopher M. Murray
/s/ Stephen L. Borrello